# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-751V

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * *<br><br>K.T. and K.T.,<br>*parents and natural guardians of C.T.*,<br><br>Petitioners,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>Respondent.<br><br>* * * * * * * * * * * * * * * * * * * * * * * * * * | TO BE PUBLISHED<br><br>Special Master Katherine E. Oler<br><br>Filed: February 20, 2020<br><br>Attorneys' Fees & Costs;<br>Reasonable Basis |

*Robert J. Krakow*, Law Offices of Robert J. Krakow, P.C., New York, N.Y., for Petitioner.

*Camille M. Collett*, U.S. Department of Justice, Washington, D.C., for Respondent.

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On June 6, 2017, K.T. and K.T. ("Petitioners") filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program")[2] alleging that their son, C.T., suffered from various injuries, including an egg allergy as a result of the Hepatitis B ("Hep B") and Pneumococcal Conjugate ("Prevnar") vaccines he received on February 13, 2015, and a green pea allergy as a result of the Pentacel vaccination he received on August 24, 2015.

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

1

Pet. at 2-4, ECF No. 1.  On April 11, 2019, Petitioners filed a Motion for Decision Dismissing Petition, ECF No. 41.  I issued a decision dismissing the petition for insufficient proof on April 12, 2019.  ECF No. 42.

On July 28, 2019, Petitioners filed a Motion for Attorneys' Fees and Costs.  Fees App., ECF No. 50.  Petitioners requested attorneys' fees in the amount of $27,396.60 and costs in the amount of $2,841.11, for a total of $30,237.11.  *Id.* at 4.  In compliance with General Order No. 9, Petitioners submitted a statement representing that "Petitioners personally incurred no costs in and paid no retainer or other compensation, money, or anything of value to their attorney."  *Id.*; *see also* Ex. 15 at Tab 5, ECF No. 1.  Respondent submitted his response on August 8, 2019 opposing the motion on the grounds that Petitioners' claim lacked reasonable basis when it was filed.  Fees Resp., ECF No. 54 at 5.  Petitioners filed a reply brief on August 11, 2019.  Petitioners also filed a supplemental brief on September 8, 2019 for "time worked by Petitioners' attorney responding to Respondent's Response," increasing the requested attorneys' fees by $3,503.00 for a total of **$33,740.71** in requested attorneys' fees and costs.  Supp. Fees App. at 2, ECF. No. 58.  For the reasons set forth below, Petitioners' motion for attorneys' fees and costs is **GRANTED IN PART**.  I award Petitioners **$30,356.46** in attorneys' fees and costs.

**I.     C.T.'s Relevant Medical History**

C.T. was born on May 23, 2014.  Ex. 1, ECF No. 5-1. at 3.  On February 13, 2015, C.T. received the Hep B vaccine in his right thigh and Prevnar vaccine in his right thigh.  *Id.* at 26.  He appeared "well and was released." *Id.*  On February 24, 2015, C.T. was brought to the doctor by K.T., after "developing a rash on his chin and [right] forearm where he touched [eggs]." *Id.* at 31.  C.T. had "no apparent swelling", "no difficulty breathing", and was "otherwise acting well." *Id.*  C.T.'s pediatrician (Dr. Gisslen) noted that the "timing of onset of [the] rash with exposure [was] strongly suggestive of an egg allergy. *Id.* at 32.

On August 24, 2015, C.T. was given Hib and Pentacel vaccinations.  *Id.* at 44.  The Hib vaccination was an accidental "extra dose." *Id.*  On August 25, 2015, K.T. brought C.T. into the clinic because of concerns that "vaccines were administered in the wrong location."  Dr. Gisslen examined C.T. and believed that "C.T. [was] demonstrating a mild reaction to the Pentacel vaccine.  The DTaP component [was] thought to be the most likely cause of this." *Id.*

On September 9, 2015, C.T. was seen by immunologist Dr. Harvey L. Leo for his various food allergies.  Ex. 6 at 39, ECF No. 13.  Dr. Leo noted that "after his immunizations, which included a Hib injection, the child developed an urticarial rash." *Id.*  Dr. Leo spent a "significant amount of time" on September 15 "discussing the child's vaccination records and in fact, I discussed the likelihood of food allergies being triggered by vaccines.  We do not feel that this has any relationship to the possibility of his development of a green pea protein allergy." *Id.*  Dr. Leo further wrote that "[C.T.] did receive an Hib vaccine.  We do not feel there is any significant adverse event to this issue.  At the same time, we do not feel this triggered the likelihood of the child's development of a green pea allergy since he is already atopic by nature and already carries an egg allergy." *Id.*

On December 14, 2015, C.T. was seen by Dr. Bethany Hall. Dr. Hall noted that "per mom, [C.T.] had vomiting within ten minutes of first set of [immunizations]." Ex. 9 at 64, ECF No. 16-1. Dr. Hall further noted that Dr. Leo "recommended holding off on further for now." *Id.*

On May 24, 2016, C.T. was seen by Dr. Aimee Pollak. Petitioner K.T. informed Dr. Pollak that C.T.'s "food allergies developed after" HIB and Pentacel vaccines which "he wasn't due for." *Id.* at 36. K.T. was "positive that Aluminum overstimulated this TH2 response." *Id.* Dr. Pollak noted that "Dr. Leo says he won't comment but may not recommend further vaccines." *Id.*

On June 7, 2016, Dr. Pollak reviewed C.T.'s vaccination history and Dr. Leo's notes regarding C.T.'s food allergies and immunizations. *Id.* at 83. Dr. Pollak wrote: "At this time, I do not believe that the food allergies were triggered by the Hib immunization (this is also stated in Dr. Leo's note) and cannot make him medically exempt from immunizations but am willing to have this evaluated further." *Id.*

On June 16, 2016, C.T. was again seen by Dr. Leo for his various food allergies. Ex. 6 at 21, ECF No. 13. In his notes, Dr. Leo wrote:

> "As you know, [C.T.'s] family has been quite concerned about the cause of the child's food allergy and has been concerned about vaccination in this child, although there is no evidence to suggest vaccinations themselves have triggered the exact reaction in the onset of his food allergies."
>
> "Although we have academic disagreement with the family regarding the vaccination risks for this child, the family is quite adamant and concerned that this is a risk factor for them. We can respect their logic in this regard particularly recent literature regarding alum as an adjuvant to the onset of food allergies [as] one of many risk factors."

*Id.* at 21.

On September 13, 2016, Petitioner K.T. contacted Dr. Aimee Pollak "requesting a medical exemption form for [immunizations]." Ex. 9 at 22, ECF No. 16-1. On September 13, 2016, Dr. Pollak wrote and signed a letter exempting C.T. from "receiving any further immunizations due to medical reasons." Ex. 2, ECF 5-2 at 1.

On March 17, 2017, C.T. was again seen by Dr. Leo for his food allergies. *Id.* at 9. Dr. Leo noted that "at his last visit, [C.T.] passed a food challenge to lentils, chickpea, green pea, and kiwi without any issues and was told to re-introduce these foods." *Id.* at 12.

## II.   Procedural History

Petitioners filed medical records on June 7, 2017 (Ex. 1-2, ECF No. 5), June 26, 2017 (Ex. 3-4, ECF No. 11), June 28, 2017 (Ex. 5, ECF No. 12), July 1, 2017 (Ex. 6, ECF No. 13), July 6, 2017 (Ex. 7-8, ECF Nos. 14-15), July 7, 2019 (Ex. 9, ECF No. 16), July 19, 2017 (Ex. 10-11, ECF No. 19) and their statement of completion on August 28, 2017 (ECF No. 21).

Respondent filed a Rule 4(c) Report on January 8, 2018, contesting Petitioners' right to damages and suggesting that the petition should be dismissed for lack of evidence. Resp.'s Rept., ECF No. 26.

On January 17, 2018, Special Master Moran held a status conference in Chambers (telephonic). Scheduling Order of Jan. 17, 2018, ECF No. 27. Petitioners indicated that they "sought compensation for pain and suffering, out of pocket expenses, and some ongoing medical treatment." *Id.* Special Master Moran directed Petitioners to file an expert report by March 23, 2018. *Id.*

On January 29, 2018, this case was transferred to me. Order Reassigning Case, ECF No. 29. After six motions for extensions of time to file an expert report (ECF Nos. 32-36, 38), I ordered a status conference to be held on April 2, 2019. *See* Non-PDF entry of Apr. 1, 2019. During the April 2, 2019 status conference, Petitioners' counsel indicated that Petitioners had been unable to retain an expert in support of their case and they had decided to file a motion for a decision dismissing their petition. Scheduling Order of Apr. 2, 2019, ECF No. 40.

On April 11, 2019, Petitioners filed a motion for a decision dismissing the Petition. ECF No. 41. On April 12, 2019, I filed a decision dismissing the petition for insufficient proof. ECF No. 42.

Petitioners filed this Motion for Attorneys' Fees on July 28, 2019. Fees App., ECF No. 50. On August 8, 2019, Respondent filed a response opposing the motion on grounds that Petitioners had failed to establish a reasonable basis for the claim. Fees Resp., ECF No. 54. Petitioners filed a reply on August 11, 2019. Fees Reply, ECF No. 57. Petitioners filed a supplemental brief for additional fees on September 8, 2019. Fees Supp., ECF No. 58.

The matter of final attorneys' fees and costs in this case is now ripe for a decision.

### III.  Parties' Arguments

Respondent argues that Petitioners have failed to establish a reasonable basis for their claim and are not eligible for an award of attorneys' fees and costs. Fees Resp. at 4. Respondent points to § 13(a)(1) of the Vaccine Act, which states that a special master may not award compensation "based on the claims of the petitioner alone, unsubstantiated by medical records or by medical opinion." *Id*. Citing the Federal Circuit's decision in *Perreira*, Respondent argues that in a reasonable basis inquiry, "a court should look not at the likelihood of success, but instead assess the feasibility of the claim, and [P]etitioner must offer more than an unsupported assertion that a vaccine caused an injury." *Id*. (citing *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Respondent argues that prior to accepting a case, "an attorney should be able to distinguish a case that has reasonable underpinnings from one that does not." *Id*. at 6 (citing *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993), *aff'd,* 48 F.3d 1236 (Fed. Cir. 1995)). Respondent further points out that the evaluation of whether there is a reasonable basis for the claim must focus on whether there is evidentiary support set forth in the petition. *Id*. at 5 (citing *Simmons v Sec'y of Health & Human Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017)).

4

Respondent argues that Petitioners' claim was not supported by the filed medical records and there was no expert report filed in support of causation. *Id.* at 4. Respondent further argues that "the instant claim lacks, and never possessed, a reasonable basis, since the medical evidence that petitioner provided failed to support [their claims of injury] and therefore fails to satisfy the Act's objective reasonable basis standard." *Id.* at 5.

Petitioners replied to Respondent arguing that a reasonable basis did exist at the time the petition was filed. *See* Fees Reply. Petitioners point to medical records showing a development of a food allergy following the receipt of a vaccine on at least two separate occasions. Fees Reply at 3-5. Petitioners further note that the Petition "cited to the medical record showing a vaccine reaction at the injection site that occurred immediately after his second Hib vaccination." *Id.* at 4. Finally, Petitioners argue that the Petition cites to Dr. Pollak's September 13, 2016 letter which stated that C.T. was exempt from receiving any further immunizations due to "medical reasons." *Id.* at 4; *see also* Ex. 2 at 1.

### IV. Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

#### A. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

#### B. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no

evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290. *See also Turpin v. Sec'y Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Human Servs.*, 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

### C. Attorneys' Fees and Costs

The Vaccine Act permits reimbursement of "reasonable" attorneys' fees and costs. § 15(e)(1). Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). The Federal Circuit has endorsed the use of the lodestar approach, in which a court first determines "an initial

6

estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court may then make an upward or downward departure from the initial calculation based on other specific findings. *Id*. at 1348. Although not explicitly stated in the statute, attorneys' costs are also subject to a reasonableness requirement. *See Perreira*, 27 Fed. Cl. 29 at 34.

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1993). However, Special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993).

## V. Discussion

### A. Good Faith

Petitioners are entitled to a presumption of good faith. *See Grice*, 36 Fed. Cl. 114 at 121. Respondent has not represented that they are contesting good faith in this matter. *See generally* Fees Resp. Based on my own review of the case, I find that Petitioners acted in good faith when filing this petition.

### B. Reasonable Basis

Respondent's objections to reasonable basis in this case rest primarily on two points, namely (1) that Petitioners provided no objective support (i.e. evidence) for their claim – in C.T.'s medical records or otherwise, and (2) that four different physicians recommended that petitioners continue to vaccinate C.T. and at least one of these physicians "opined that he did not believe that the vaccines were the cause of C.T.'s food allergies." Fees Resp. at 3. As noted above, the standard for establishing reasonable basis is much lower than that required to prevail on a vaccine-injury claim. *Chuisano,* 116 Fed. Cl. 276 at 287. However, Petitioner is still required to provide *some* evidence of a reasonable expectation of establishing causation. *Bekiaris*, 2018 WL 4908000, at *6. For the following reasons, I find that a reasonable basis existed for filing this petition.

#### a. The medical record evidence links vaccination to C.T.'s injury

C.T.'s medical records include notations from Dr. Pollack's office that contemplate a link between his food allergies and vaccines. *See, e.g.*, Ex. 9 at 54, ECF No. 16-1 ("had wrong vaccines at other office and now having food allergies…."); *Id.* 64 ("[P]rior pediatrician one time got the wrong [immunizations] and then he also developed food allergies…sees [immunologist] and he recommended holding off on further for now.").

In addition to notations from Dr. Pollack's office, notes from immunologist Dr. Leo's office also show a link between vaccination and C.T.'s injuries. *Id.* at 111 ("We can respect their

logic in this regard particularly recent literature regarding alum as an adjuvant to the onset of food allergies of [one] of many risk factors."); *Id.* at 120 ("After [C.T.'s] immunizations, which included a Hib injection, the child developed an urticarial rash"); *see also id.* at 121 ("We understand the family's dilemma regarding vaccines….").

### b. Dr. Pollack's letter provides reasonable basis

C.T.'s medical records also include a letter from Dr. Pollack exempting him from vaccination for "medical reasons." *Id.* at 23. Petitioners cite this letter in their Petition (Pet. ¶ 14, ECF No. 1) and again in their Motion for Attorneys' Fees. Fees App. at 10, ECF No. 50.

Petitioners are correct that "the letter provided by C.T.'s pediatrician…is a significant factor." *Id.* at 14. In this letter, Dr. Pollack expresses her medical opinion that C.T. should not receive further vaccinations. Although the letter does not articulate a link between vaccination and allergies, this is the only explanation that makes sense in the context of C.T.'s medical records. Under the reduced standard of proof required for establishing reasonable basis, Dr. Pollack's letter satisfies such a standard.

I find that the totality of the evidence outlined above, in combination with the reduced standard of proof required for establishing reasonable basis, was sufficient to provide Petitioners with a reasonable basis to file this petition.

## VI.   Attorneys' Fees

Petitioners request a total of $33,740.71 in attorneys' fees and costs. Fees Supp. at 2, ECF No. 58.

### A. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. See *McCulloch v. Sec'y of Health & Human Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in McCulloch and has issued a Fee Schedule for subsequent years.[3]

---

[3] The 2015–2016 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

Petitioners request the following hourly rates for the attorney and paralegals who have worked on this matter to date:

| Name | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Robert Krakow | $425.00 | $435.00 | $450.00 | $464.00 |
| Paralegal | $125.00 | $140.00 | $150.00 | $156.00 |

The requested rates for paralegals and Mr. Krakow are consistent with what Mr. Krakow has previously been awarded. *See Jones v. Sec'y of Health & Human Servs.*, No. 16-864V, 2019 WL 5098965 at *3 (Fed. Cl. Spec. Mstr. Aug. 26, 2019) (awarding between $125-$156/hour for paralegals and awarding between $425-$464/hour for 2016-2019, respectively, for Robert Krakow); *Austin v. Sec'y of Health and Human Servs.*, No. 05-579V, 2019 WL 4126538 at *2 (same). These rates are also in line with the OSM Attorneys' Forum Hourly Rate Fee Schedule.[4] Accordingly, I find the requested rates reasonable and find that no adjustment is warranted.

### B. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioners' counsel has provided a breakdown of hours billed and costs incurred. Fees App., Tab 2. I find the hours largely reasonable, but a reduction in the numbers of hours billed by Mr. Krakow is appropriate, as some of the time billed by Mr. Krakow is excessive and administrative in nature.

### 1. Administrative Work

---

The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

[4] The 2019 Fee schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.

Mr. Krakow billed time for performing administrative tasks such as reviewing docket entries and organizing files. It is well established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. *Rochester v. United States,* 18 C. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services ... should be considered as normal overhead office costs included within the attorneys' fee rates"). Mr. Krakow has previously been notified that "billing for clerical and other secretarial work is not permitted in the Vaccine Program." *See P.R. v. Sec'y of Health & Human Servs.*, No. 10-96V, 2018 WL 2225172 at *4-*5 3 (Fed. Cl. Spec. Mstr. Apr. 5, 2018) (Special Master Dorsey refusing to compensate Mr. Krakow for administrative billing).[5] Therefore, I will not compensate Mr. Krakow for the following entries:

| Date | Timekeeper | Entry | Reduction |
|---|---|---|---|
| 06/06/2017 | Paralegal | Preparing documents for mailing | 2.0 hours/$280.00 |
| 06/07/2017 | Paralegal | Organize files | 0.35 hours/$49.00 |
| 06/09/2017 | R. Krakow | Review docket entries/Update calendar | 0.2 hours/$87.00 |
| 06/11/2017 | Paralegal | Review docket entries/Update calendar | 0.1 hours/$14.00 |
| 06/19/2017 | R. Krakow | Organize file | 0.1 hours/$43.50 |
| 06/26/2017 | R. Krakow | Scan/Label/OCR/Bates number documents | 0.7 hours/$304.50 |
| 06/27/2017 | Paralegal | Prepare files for mailing/bates stamp | 0.4 hours/$56.00 |
| 06/28/2017 | Paralegal | Organize file | 0.15 hours/$21.00 |
| 06/30/2017 | Paralegal | Review/send faxes/bates stamp and prep files for mailing | 0.85 hours/$119.00 |
| 07/06/2017 | Paralegal | Organize file | 0.1 hours/$14.00 |
| 07/07/2017 | Paralegal | Scan/Label/OCR/Bates number documents | 0.5 hours/$70.00 |
| 07/10/2017 | R. Krakow | Receive docket entry/update calendar | 0.15 hours/$65.25 |
| 07/12/2017 | Paralegal | Organize file | 0.05 hours/$7.00 |
| 07/19/2017 | Paralegal | Scan/Label/OCR/Bates number documents | 1.2 hours/$168.00 |
| 08/07/2017 | Paralegal | Preserve invoice | 0.1 hours/$14.00 |
| 08/27/2017 | R. Krakow | Review file/file records | 0.2 hours/$87.00 |
| 08/29/2017 | R. Krakow | Review docket entry | 0.1 hours/$43.50 |
| 09/17/2017 | R. Krakow | Edit affidavit for style | 0.6 hours/$261.00 |
| 11/03/2017 | R. Krakow | Review docket entry | 0.1 hours/$43.50 |
| 11/06/2017 | R. Krakow | Review docket entry | 0.1 hours/$43.50 |
| 01/21/2018 | R. Krakow | Review docket entry | 0.1 hours/$45.00 |
| 02/01/2018 | R. Krakow | Review docket entry | 0.05 hours/$22.50 |
| 05/23/2018 | R. Krakow | Review docket entry | 0.1 hours/$45.00 |
| 07/24/2018 | R. Krakow | Review docket entry | 0.05 hours/$22.50 |
| 09/21/2018 | R. Krakow | Review file | 0.1 hours/$45.00 |
| 09/25/2018 | R. Krakow | Review docket entry | 0.1 hours/$45.00 |
| 11/21/2018 | R. Krakow | Review docket entry | 0.1 hours/$45.00 |
| 01/25/2019 | R. Krakow | Review docket entry | 0.1 hours/$46.40 |

---

[5] Such tasks include: Setting up meetings, organizing exhibits, bates stamping records, filing records, burning discs, mailing documents, completing case inventory, receiving docket notices, organizing files, and updating calendars. *See* P.R. v. Sec'y of Health and Human Servs., No. 10-96V, 2018 WL 2225172 at *4 - *5 (Fed. Cl. Spec. Mstr. Apr. 5, 2018).

| Date | Timekeeper | Entry | Reduction |
|---|---|---|---|
| 04/26/2019 | R. Krakow | Review docket entry | 0.05 hours/$23.20 |
| 05/09/2019 | R. Krakow | Format document | 0.1 hours/$46.40 |
| 05/13/2019 | R. Krakow | Review docket entry | 0.1 hours/$46.40 |
| 05/14/2019 | R. Krakow | Review docket entry | 0.1 hours/$46.40 |
| 07/07/2019 | R. Krakow | Review file | 0.1 hours/$46.40 |
| 07/27/2019 | R. Krakow | Organize files for motion; prepare receipts | 0.7 hours/$324.80 |
| 07/27/2019 | R. Krakow | Review file; prepare exhibits for filing | 0.5 hours/$232.00 |
| 07/28/2020 | Paralegal | Prepare exhibits for filing | 0.5 hours/$78.00 |

### 2. Hours incorrectly billed at attorney rate

In addition to billing for administrative work, Mr. Krakow also billed at his rate for two paralegal entries. Accordingly, I will reduce the billed rate for these entries to the rate billed by the paralegal.

| Date | Timekeeper | Entry | Reduction |
|---|---|---|---|
| 06/19/2017 | Paralegal | Prepare request letters | $354.00 |
| 06/26/2019 | Paralegal | Prepare N Filing | $41.00 |

The total reduction is therefore **$3,346.75** ($2,950.75 of non-compensable work + $395.00 of incorrectly billed work). I award all other requested fees in full.

Total attorneys' fees to be awarded: **$27,554.85**.

### C. Reasonable Costs

Petitioners request a total of $2,841.11[6] in filing fees, medical records, postage costs and expert fees. I have reviewed the supporting documentation and find that none has been provided for the following two entries:

| Date | Item | Cost |
|---|---|---|
| 06/06/2017 | $3.50 for each envelope with 45 authorizations - send and return | $7.00 |
| 06/06/2017 | 46 – authorizations/24 Draft prints of petition and other materials/60- printout of exhibits 1 and 2/130 total | $32.50 |

Accordingly, these two items will not be compensated. I award all other requested fees in full.

Total costs to be awarded: **$2,801.61**.

---

[6] Petitioners have actually provided three different amounts with respect to their costs: $2,841.11 as "total expenses" (Fees App. at 17), $2,801.61 as "total costs" (Fees App. at 19), and $2,713.91 as the amount requested in the Motion. Fees Supp. at 2 n.1 ("Instead of the amount listed in the invoice, Exhibit 15-Tab 2, which is $2,841.11, the motion listed the requested amount for costs as $2,713.91. The total amount of attorney's fees and costs requested in the Motion, however, was correct, reflecting the amount of costs listed in the invoice."). I have chosen to use $2,841.11 as the requested amount to include all possible costs.

### VII. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioners' application, as follows:

A lump sum in the amount of **$30,356.46**, representing reimbursement of Petitioners' final attorneys' fees and costs in the form of a check jointly payable to Petitioners and their attorney, Robert J. Krakow.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with this decision.[7]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.